John Silver and Mary F. Silver v. Commissioner.
Silver v. Commissioner
Docket No. 72005.
United States Tax Court
T.C. Memo 1961-6; 1961 Tax Ct. Memo LEXIS 342; 20 T.C.M. (CCH) 32; T.C.M. (RIA) 61006; January 19, 1961
Norton L. Armour, Esq., for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax for the year 1952 in the amount of $1,770.04. The only question for decision is whether or not the cancellation of personal loans of petitioner John Silver, in the amount of $3,000 and the payment of his personal debts in the amount of $2,993.28 by his employer, constitute taxable income of petitioner. All of the facts are stipulated, are so found, and the stipulation is included herein by this reference. Petitioners are individuals, husband and wife, residing in Arlington, Massachusetts. The return for the period here involved was filed with the district director for the district of *343 Massachusetts. From August 1943 to the end of 1952, John Silver, sometimes hereafter referred to as petitioner, was employed as manager of a plant of Samson Cordage Works, sometimes hereinafter referred to as Samson, located at Shirley, Massachusetts. Petitioner and Samson entered into an employment termination agreement dated November 21, 1952, with certain changes thereto dated November 24, 1952. The agreement, among other things, provides: 1. SILVER'S employment with SAMSON shall terminate not later than December 1, 1952; 2. SILVER agrees that all papers, formulas, contracts and physical properties of every name, nature and description belonging to SAMSON, and any and all material in his possession pertaining to the management and operation of the Mill at said Shirley, wherever the same may be located, will be delivered to SAMSON on this twenty-first day of November, 1952; * * *
4. SILVER agrees to leave the mill premises of SAMSON immediately, and not to return unless requested by SAMSON; and further agrees that he will have no discussions with the employees of SAMSON in reference to mill matters; 5. SAMSON agrees that it will cancel SILVER'S indebtedness to it *344 in the amount of Three Thousand ($3000) and will cancel all his unsecured notes to said SAMSON; * * *
7. SAMSON agrees that it will pay certain creditors of SILVER in full, in accordance with the list attached hereto and made a part hereof, and will obtain for SILVER receipted bills on such accounts; 8. SAMSON agrees to pay SILVER on December 1, 1952 his present monthly salary for the month of December. Said total monthly payment for December shall not exceed the amount of Eight Hundred Dollars ($800.00), less withholding and social security taxes. Unsecured loans in the amount of $3,000 from Samson Cordage Works to petitioner were outstanding on the books of the company as of November 21, 1952 and the balance of $3,000 was charged off to "factory expense" as of December 31, 1952. The corporation paid $2,993.28 to personal creditors of the petitioner under the terms of Item 7 of the agreement dated November 21, 1952. On July 28, 1953, John Silver executed a document entitled "Release Of All Demands" containing the following provisions: FOR AND IN CONSIDERATION of the sum of one thousand six hundred and eighty dollars and forty-six cents ($1680.46) to me paid by Samson *345 Cordage Works, a Massachusetts corporation having its principal place of business in Boston, in the County of Suffolk and Commonwealth aforesaid, receipt of which is hereby acknowledged, and IN FURTHER CONSIDERATION of a letter to be sent within fourteen (14) days hereafter to all creditors previously approached or otherwise contacted by the said Samson Cordage Works, its agents, servants or employees under the terms of paragraph 7 of a certain agreement hereinafter referred to, said letter to contain, substantially, a statement that any bills paid thereunder for me or on my behalf were so paid as per said agreement and in fulfillment of the obligations incurred by the said Samson Cordage Works thereunder, the said letter to be worded to the mutual satisfaction of the said Samson Cordage Works and myself, have remised, released and forever discharged and do HEREBY for myself, my Heirs, Executors, Administrators and Assigns, remise, release and forever discharge the said Samson Cordage Works and its successors in interest of and from all debts, demands, actions, causes of action, suits, dues, sum and sums of money, accounts, reckonings, bonds, specialties, covenants, contracts, *346 controversies, agreements, promises, doings, omissions, variances, damages, extents, executions, and liabilities whatsoever, both in Law and Equity, or which may result from the existing state of things which against the said Samson Cordage Works, I, the said John Silver, now have or ever had, from the beginning of the world to the day of the date of these presents, particularly with reference to my previous employment by the said Samson Cordage Works and to a certain termination agreement, dated 21 November 1952, executed by and between the said Samson Cordage Works and myself on that date and on 24 November 1952, but without application to rights or interests, if any, appurtenant to a certain release executed to me on behalf of the said Samson Cordage Works relative to a certain machine developed by me, IT BEING FURTHER UNDERSTOOD that acceptance of this release by the said Samson Cordage Works constitutes an acknowledgment that the said Samson Cordage Works retains to no claim against me relative to said previous employment or to any loans made to me and that any obligations imposed on me by said agreement, so far as they may, up to the day of the date of these presents, apply, *347 have been fulfilled. The Commissioner, in the statement accompanying the deficiency notice, explained that It has been determined that the amount of $5,993.28, representing the cancellation of your unsecured loans from the Samson Cordage Company in the amount of $3,000.00 and personal bills paid for you by the Samson Cordage Company in 1952 in the amount of $2,993.28 represents income taxable in 1952 under Section 22(a) of the Internal Revenue Code of 1939. The burden is on the petitioners to prove error in the Commissioner's determination. No witnesses were called and the only evidence before us is contained in the stipulation of facts which has been summarized above. In the petition and on brief petitioners allege that the amounts involved have not been proved, that certain credits owed petitioners were not allowed, that the amount of the personal debts paid by the employer was really in settlement of a tort liability for libel and slander owed by the employer to petitioner and that the cancellation of the $3,000 indebtedness, even if proved, "was nugatory and of no financial benefit to your Petitioners." The fundamental fault with the petitioners' argument is that there *348 is not a bit of evidence in the record to support it. Whatever comfort there is for petitioners is to be found in the allegations made in the petition and the arguments on brief. But this falls far short of showing any error in the Commissioner's determination, and the more so because we think the stipulated facts fully support that determination. Decision will be entered for the respondent'